**CARIBOU BOARD OF EDUCATION et al.**

**v.**

**CARIBOU TEACHERS ASSOCIATION.**

Supreme Judicial Court of Maine.

June 19, 1979.

---

See also, Me., 402 A.2d 1279.

Ellsworth T. Rundlett, III (orally), Portland, Ferris A. Freme, Caribou, for plaintiffs.

Sunenblick, Fontaine & Reben by Donald F. Fontaine (orally), Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Caribou Teachers Association (hereafter "Association") appeals from a decision of the Superior Court (Aroostook County) vacating an arbitration decision in favor of the Association. The arbitrator's decision, rendered on May 23, 1977, provided that the Caribou Board of Education had failed to renew teacher Catherine Clark's contract without "just cause," and ordered that she be reinstated with back pay. Pursuant to the provisions of the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–49 (Supp.1978), the Board of Education made application in the Superior Court that the arbitrator's decision be vacated on the ground that the arbitrator had exceeded his powers.[1] On

---

1. Originally, the Board of Education made an application to the Superior Court pursuant to 14 M.R.S.A. § 5928(2) (Supp.1978) for a stay of the arbitration on the ground "that there [was] no agreement to arbitrate." The Board's application for a stay was made on January 10,

January 2, 1979, the Superior Court vacated the arbitrator's decision, finding that the Association "had no right to a grievance arbitration on the issue sought to be arbitrated because no labor contract existed between the parties on the date when the action taken by the [Board of Education] which gave rise to the grievance occurred."

We agree with the Association that the Superior Court erred in determining that the Association had no right to grievance arbitration. Accordingly, we sustain the appeal and direct that the award of the arbitrator be confirmed.

The arbitration grievant, Catherine Clark, taught in the Caribou school system for three consecutive years, from August 1, 1973, through July 31, 1976. In August 1976 the Board of Education informed her of its decision not to renew her contract. Claiming that she had the right to have her contract renewed unless the Board could show it had "just cause" for refusing to rehire her, Clark initiated a grievance proceeding on September 15, 1976. The grievance was presented to an impartial arbitrator, who concluded that the Board did not have "just cause" for failure to renew her contract.

The Board of Education did not present any evidence to the arbitrator concerning the merits of the "just cause" issue. Instead, the Board relied solely on its contention that the arbitrator had no authority to act with respect to Clark's grievance. The Board argues that no collective bargaining contract between the Caribou Teachers Association and the Caribou School Department was in effect during the period from August 1, 1976, to December 31, 1976, when the grievance arose, and that therefore the arbitrator had no authority to proceed with contract grievance arbitration.[2]

The pertinent collective bargaining history between the Caribou Teachers Association and the Caribou School Department is

1977, but despite the statute's direction that the matter be "forthwith and summarily tried," no immediate action was taken. The arbitrator's decision was rendered on May 23, 1977, at which time the Superior Court had failed to act on the Board's application for a stay.

On June 20, 1977, the Board of Education filed in the pending Superior Court stay proceeding a "Motion to Modify, Vacate or Correct" the arbitrator's award. Although the previous application for a stay of arbitration had been rendered moot by the arbitrator's award of May 23, 1977, the "Motion to Modify, Vacate or Correct" may be viewed as an attempt to make an application to the Superior Court, pursuant to 14 M.R.S.A. § 5938(1) (Supp.1978), which provides in part:

"Upon application of a party, the court shall vacate an award where . . . (E) [t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; . . . ."

The record clearly indicates that the Board of Education did not raise an objection at the arbitration hearing; and since there was no determination at all made by the Superior Court regarding the Board's section 5928 application, there was of course no determination adverse to the Board which would bar the Board from making an application pursuant to section 5938(1)(E).

Contrary to the Board's argument on appeal, we do not read section 5928(2) to mean that the Board's mere filing of its application for a stay of arbitration put an automatic halt to the arbitration proceeding. The statutory directive to the Superior Court to try the stay application "forthwith and summarily" gives that application procedural priority on the court's trial list, but does not even purport to give the applicant the full requested relief even before the court considers the merits of the application. For some reasons (which may have included the Board's failure to insist before the Superior Court on the statutory priority of trial), the Superior Court never heard the application and never took any action either granting or denying it. In absence of any court stay, the arbitrator quite properly carried the arbitration proceeding through to completion in the ordinary course.

2. The arbitrator decided that a contract provision for grievance arbitration was in effect at the time the Catherine Clark grievance arose. Thus, the arbitrator concluded he had power to arbitrate the "just cause" issue raised by the grievance. The Board of Education does not seek to vacate the arbitrator's award on the ground of an alleged error of law in deciding that "just cause" issue. Rather, it seeks vacation of the award on the ground the arbitrator had no power at all to arbitrate that issue, thus raising a question that "is always open to judicial review." *Board of Directors of Me. S.A.D. No. 33 v. Teachers' Ass'n of Me. S.A.D. No. 33*, Me., 395 A.2d 461, 463 (1978).

set out in detail in our opinion in the companion case of *Caribou Teachers Association v. Caribou School Department,* Me., 402 A.2d 1279 (1979), also decided today. There we concluded that the Department initially agreed that a collective bargaining contract between the Department and the Association to succeed the 1975–76 contract would take effect on August 1, 1976. In that companion case we upheld the decision of the Maine Labor Relations Board that the Department's subsequent attempt to back away from that agreement, and its insistence that the successor contract not take effect until December 31, 1976, constituted a violation of the Department's duty to bargain in good faith.

We also held that the Maine Labor Relations Board's remedial order could enforce contractual terms carried over into the successor contract by the operation of the negotiation ground rule. We found that the effect of the ground rule was such that the parties *agreed* that if no changes in the articles of the preceding 1975–76 contract were proposed by either side at the initial collective bargaining session, those articles would be carried over into the successor contract. Thus, a remedial order issued by the Maine Labor Relations Board giving effect to those articles as of August 1, 1976, was proper.

The preceding 1975–76 contract provided, *inter alia* :

(1) "A 'grievance' is an alleged violation of this agreement or any dispute with respect to its meaning or application." [Article III(B)(1), Grievance Procedure: Definitions]

(2) "If the Association or the aggrieved is not satisfied with the disposition of the grievance [made by the Caribou Board of Education] *the Association or the aggrieved may . . . submit the grievance to arbitration* by so notifying the Board in writing." (Emphasis added) [Article III(E)(4)(a), Grievance Procedure: Impartial Arbitration]

(3) "The arbitration proceedings will be conducted in accordance with the rules and procedures of the American Arbitration Association." [Article III(E)(4)(b), Grievance Procedure: Impartial Arbitration]

(4) "The arbitrator shall, as soon as practicable after his selection, render his decision in writing to all parties in interest, setting forth his findings of fact, reasoning, and conclusions on the issues submitted. . . . *The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties.*" (Emphasis added) [Article III(E)(4)(d), Grievance Procedure: Impartial Arbitration]

With respect to that quoted contract language, neither party proposed any changes at the initial collective bargaining session.[3] Therefore, the parties agreed that those provisions were carried over to the successor contract. The arbitrator who heard and resolved Catherine Clark's grievance in her favor was therefore acting under the authority of a contractual provision for grievance arbitration which the parties had already agreed upon to be effective starting August 1, 1976.

The fact that the complete successor contract, which contained the above-quoted provisions carried over from the 1975–76 contract was not executed until February 18, 1977, is immaterial. Actually, arbitration machinery for the resolution of con-

---

**3.** Article III(E)(4)(a) of the 1975–76 contract, quoted in part in item (2) of the text, did provide that the Association or the grievant could submit a grievance to binding arbitration only if it notified the Caribou Board of Education in writing of its intention to do so "within three days" of the decision made by the Board of Education on the merits of the grievance. The initial bargaining proposal of the Association did propose that this period be lengthened from three days to ten days. Several months later, when the issue remained unresolved, it was submitted to interest arbitration pursuant to 26 M.R.S.A. § 965(4) (1974). Both the interest arbitration award and the written contract later executed by the parties on February 18, 1977, provided for a five-day notice period. The Board of Education has raised no issue as to the timeliness of Catherine Clark's notice of arbitration.

tract grievances had already been agreed upon at the time Catherine Clark's grievance arose in August 1976. As we have concluded in the companion case of *Caribou Teachers Association v. Caribou School Department, supra,* the parties had agreed that the successor contract would commence on August 1, 1976, and that it would take over any provisions of the prior contract that neither party had put into negotiation. Thus, the Superior Court erred in concluding that there was no contractual agreement providing for arbitration at the time Catherine Clark's grievance proceeding was initiated.

The case at bar is remarkably similar to the facts before the court in *Taft Broadcasting Co. v. NLRB,* 441 F.2d 1382 (8th Cir. 1971) (Aldrich, J.). There a 1963 collective bargaining contract expired at the end of 1964. At the start of 1965 the union employees went on strike. The strike was terminated in April 1966 when the union and the employer executed a rough draft agreement for a successor contract. Differences between the two parties remained, however, and no final contract was entered into. A proposed final draft submitted by the employer to the union on June 22, 1966, met with union objections and was never signed by the union. On April 3, 1967, the employer wrote a letter to the union stating:

> "For your information and the information of the affected employees, it is our intention to continue in effect the wages, hours, and other conditions of employment presently in effect as fully set forth in the draft of June 22, 1966, and we will continue handling any grievances that may arise in accordance with the procedure set forth therein." *Id.* at 1383.

The union did not respond, but the NLRB concluded that the employer's letter did not call for a response and that an implied agreement had been reached "for an interim agreement that the various enumerated terms and conditions of employment set out in the June 22 draft, as well as the grievance procedures detailed therein, would continue in effect . . . ." *Id.* at 1384. The court of appeals upheld that finding of the NLRB and rejected the employer's contention that an employee grievance which arose in February 1968 (at which time there was still no final collective bargaining agreement in effect) was not subject to grievance arbitration. The NLRB ordered the employer to submit the grievance to arbitration and the court of appeals granted enforcement of that order.

In the case at bar we have more than an interim agreement. The ground rule for negotiation provided that articles for which no changes were proposed at the initial collective bargaining session would become part of the final successor collective bargaining agreement. Through the operation of the ground rule, the Association and the Caribou School Department had agreed that binding arbitration would be available for the resolution of grievances and that the successor contract containing those provisions would be in effect from and after August 1, 1976.

■ It remains true, however, that not only must there be an agreement to submit grievances to arbitration, there must also be some contractual agreement as to what will constitute a grievance. The parties provided just such a definition in Article III(B)(1) of the prior contract, a provision automatically carried over into the successor contract by the operation of the ground rule. That section defined a "grievance" as "an alleged violation of this agreement [the collective bargaining contract] or any dispute with respect to its meaning or application." Catherine Clark alleged a violation of the agreement in that the Department refused to renew her contract without just cause. But in order for this allegation to suffice as an alleged violation of the agreement, and therefore as a grievance, it must first be demonstrated that a prohibition against nonrenewal without just cause was also a contractual provision binding upon the Department in the period after August 1, 1976, when she was refused renewal.

Article IV(B) of the preceding 1975–76 contract did provide that "no teacher on continuing contract shall be denied renewal

of contract without just cause." From the start of their 1976 negotiations, the parties discussed the Department's request that the "just cause for nonrenewal" clause be eliminated. When that issue and some eighteen others failed of resolution at the collective bargaining table, the parties submitted them to interest arbitration pursuant to 26 M.R.S.A. § 965(4) (1974). On December 31, 1976, the arbitration panel issued its award and by a vote of two-to-one decided that the "just cause for nonrenewal" clause of the preceding contract should be continued without change in the successor contract. In approving the Association's proposal for "the continuation of the current contract language" with respect to Article IV(B), the interest arbitrators made a decision binding upon both parties that Article IV(B) should remain unchanged and intact from August 1, 1976, forward.[4]

Our analysis leads us to conclude that the arbitrator was entirely correct when he decided that he did have the power to arbitrate Catherine Clark's grievance. The parties originally agreed, through the operation of the negotiation ground rule, that binding grievance arbitration machinery would be provided in the successor contract starting August 1, 1976. They agreed that any alleged violation of the contract would constitute a grievance. And the interest arbitrators mandated that the successor contract include a clause prohibiting the nonrenewal of a continuing teacher's contract without just cause, thus providing the substantive law to be applied by the grievance arbitrator.

The grievance arbitrator did not exceed his powers in rendering a decision in favor of the Association and Catherine Clark. The Superior Court erred in vacating that decision.

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacating the arbitration award set aside.

4. Except for decision on issues concerning salaries, pensions, and insurance, all decisions of a majority of an interest arbitration panel on

Remanded to the Superior Court for entry of judgment confirming the arbitration award.

Costs on appeal allowed to appellant.

POMEROY and DELAHANTY, JJ., did not sit.

properly submitted subjects of dispute are binding upon the parties. 26 M.R.S.A. § 965(4) (1974).