718 F.2d 286
 114 L.R.R.M. (BNA) 2981, 99 Lab.Cas. P 10,495,
4 Employee Benefits Ca 2261
 TEAMSTERS LOCAL UNION 688, affiliated with International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America, a labor organization, Miscellaneous
Drivers, Helpers and Public Employees Union, Local No. 610,
affiliated with International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, a labor
organization, Appellees,
v.
JOHN J. MEIER COMPANY, a corporation, Appellant.
 No. 82-1452.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 10, 1983.
Decided Oct. 11, 1983.
 
 Thomas M. Hanna, St. Louis, Mo., for appellant John J. Meier Co.; McMahon, Berger, Breckenridge, Hanna, Linihan & Cody, St. Louis, Mo., of counsel.
 Clyde E. Craig, St. Louis, Mo., for appellees; Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., of counsel.
 Before ROSS and FAGG, Circuit Judges, and BEAM,* District Judge.
 FAGG, Circuit Judge.
 
 
 1
 This action was brought by two unions pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185(a), to recover vacation pay for their members. Based on a joint stipulation of facts and attached exhibits, the district court entered judgment for the unions. See Teamsters Local Union No. 688 v. John J. Meier Co., 537 F.Supp. 226 (E.D.Mo.1982). We affirm the judgment of the district court.
 
 
 2
 Separate collective bargaining agreements between both unions and Meier extended from June 1, 1976 to June 30, 1979, with yearly renewal after that period in the absence of termination. The agreements provide for vacations with pay in a given calendar year determined by seniority and, except for first-year employees covered by the Local 610 agreement, the number of days the employee worked in the preceding calendar year. The Local 610 agreement specifies that vacation eligibility for new employees is determined by the number of days the employee has worked in the 365-day period following employment rather than on a calendar year basis.
 
 
 3
 Meier gave the required notice of termination and the agreements expired on June 30, 1979. Nevertheless, the employees continued to work for Meier following expiration of the agreements. Each of the expired agreements provides that if on its expiration no new agreement has been reached, (1) the union and company shall continue to negotiate in good faith until a new agreement is reached or one of the parties concludes that it is not probable that further negotiations will result in an agreement, (2) all terms and provisions of the expired agreement shall continue in effect until a new agreement is adopted or negotiations are terminated, and (3) the terms of a new agreement shall be retroactive to the expiration of the previous agreement. For work performed after June 30, 1979, the employees received wages and fringe benefit contributions at the rates established by the expired agreements.
 
 
 4
 Negotiations concerning new agreements were conducted on several occasions in the summer and fall of 1979. Citing financial hardship, Meier sought reductions in wages and benefits during the bargaining sessions. New agreements were not concluded though, and on November 21, 1979, Meier notified the unions that the company had concluded it was not probable that further negotiations would result in agreements. In addition, Meier stated that it would implement its final offer on December 1, 1979. As a result, the unions began an economic strike against Meier on December 1, 1979. Despite the strike, negotiations continued toward new agreements, including bargaining over vacation benefits, but no agreement was reached with either union.
 
 
 5
 Late in November of 1980 the unions notified Meier that they intended to discontinue picketing and strike activities and that employees represented by the unions were submitting their unconditional offer to return to work. The unions requested, however, that Meier disburse vacation pay to striking employees who had qualified for vacation benefits under the 1976-79 agreements. Meier refused the request for vacation pay and declined the unions' additional request to arbitrate the question. None of the striking employees has returned to work.
 
 
 6
 In this action the unions seek the vacation pay which Meier refused to pay in 1980. The unions contend that the employees became entitled to vacation pay, payable in 1980, by virtue of the work performed by them in 1979. According to their terms, the 1976-79 agreements governed the parties as the employees continued to work for Meier after June 30, 1979. By the time the strike began, however, the 1976-79 agreements were no longer in effect since Meier had terminated negotiations after concluding it not probable that further negotiations would lead to agreements. Consequently, in 1980, the calendar year in which the disputed vacation pay would ordinarily have been disbursed, no agreement providing for vacation pay was currently in effect. Hence Meier argues that failure to reach new collective bargaining agreements relieved the company of any obligation to disburse vacation pay in 1980. The unions view the disputed vacation pay as accrued benefits to which the employees are entitled irrespective of the failure to reach new agreements covering the year 1980.
 
 
 7
 We considered a claim for vacation pay in Buchholtz v. Swift & Co., 609 F.2d 317 (8th Cir.1979), cert. denied, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). In that case a plant closing barred the employees from meeting a requirement in a collective bargaining agreement that employees be on the company's active payroll on December 28 in order to be eligible for vacation in the succeeding year. Based on the language of the agreement, the collective bargaining history, and past practice under the agreement, we held that this eligibility requirement was not merely an administrative device but was instead a precondition to vacation eligibility. Id. at 323-26. As a result, failure to meet this condition disqualified the employees from vacation pay, even though the other conditions of eligibility had been met. In addition, we held that the company's action in closing the plant before December 28 did not excuse the employees' failure to be on the active payroll on this date. Id. at 326-27. We noted that the parties had bargained over contract provisions concerning a plant closing, and that as a consequence the union and its members knew or should have known that the agreement did not provide for vacation benefits if the plant closed before the employees met all conditions of eligibility. Id. at 327.
 
 
 8
 In the present case a stipulation has resolved the central issue of the Buchholtz case; that is, whether employees met the vacation eligibility requirements provided by a collective bargaining agreement. By stipulation the unions and Meier have agreed that all employees for whom vacation pay is sought have satisfied all contractual prerequisites to vacation benefits specified in the 1976-79 agreements. In addition, the stipulation establishes the amount due each employee, should Meier be found obligated for the disputed vacation pay. Consequently, the issue in this case, one not addressed in Buchholtz, is whether payment of vacation pay in 1980, to employees who had qualified for vacation benefits by working in 1979, was an obligation contingent on the parties' reaching a new collective bargaining agreement which would have been in effect during 1980.
 
 
 9
 Ultimately the question is whether the employees had accrued rights to 1980 vacation pay which continued beyond the effective period of the 1976-79 agreements. As the Supreme Court has stated, albeit in a different context, "[w]e see no reason why parties [to a collective bargaining agreement] could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired." John Wiley & Sons v. Livingston, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964). The 1976-79 agreements, however, contain no language clearly providing that vacation pay earned under those agreements constitutes an obligation of the employer which survives failure to reach a new agreement.
 
 
 10
 As we determine the effect to be given the vacation benefit provisions of the 1976-79 collective bargaining agreements, we note the prevailing view that vacation benefits are compensation for work already performed. "A vacation with pay is in effect additional wages. * * * The consideration for the contract to pay for a week's vacation had been furnished, that is to say, one year's service had been rendered prior to June 1, so that the week's vacation with pay was completely earned and only the time of receiving it was postponed." In re Wil-Low Cafeterias, 111 F.2d 429, 432 (2d Cir.1940). In Buchholtz, supra, 609 F.2d at 325, we noted our agreement with this general proposition, but based our holding on the employees' failure to meet one of the vacation eligibility requirements.
 
 
 11
 The Sixth Circuit relied on the principle expressed in the Wil-Low Cafeterias opinion when it decided Smith v. Kingsport Press, 366 F.2d 416 (6th Cir.1966), a case with facts very similar to those of the present case. In Smith, employees brought suit to recover vacation pay which they claimed had accrued under an expired collective bargaining agreement. No new agreement had been reached and the employees remained on strike at the time the appeal was argued. On appeal the court first determined that the employees had met the eligibility requirements for vacation pay established by the expired agreement. Id. at 417-19. Next, in response to the company's contention that vacation pay provided by the agreement was intended as compensation for future services, the court noted it had found no provision in the contract nor any precedent that indicated vacation pay should be considered as compensation for future services. Id. at 419. The court held that, in the absence of language in the agreement to the contrary, vacation pay provided by a collective bargaining agreement is consideration for past services rendered and that the disputed vacation pay was thus due and payable. Id. at 420. We follow this approach to the obligation of an employer for vacation pay when employees have met the vacation pay eligibility requirements established by an agreement which expires before the time for distribution of vacation pay.
 
 
 12
 In the present case there is no language in the 1976-79 agreements specifying that vacation pay is anything but compensation for work already performed. Indeed, both agreements provide that an employee with more than one year's seniority who leaves the employment of the company is entitled to pro-rata vacation pay, thus bolstering the interpretation that vacation pay was intended as compensation for past services. Nor do the agreements indicate that payment of vacation pay in 1980 was contingent on the parties' reaching new agreements which would have been in effect during 1980, at the time it was expected vacation pay earned in 1979 would be disbursed. Hence, given the stipulation that the employees met the contractual prerequisites to vacation benefits, we find nothing to negate the conclusion that in this case the employees accrued entitlement to vacation pay by virtue of work performed by them in 1979. Consequently, Meier is liable for the claimed vacation pay despite expiration of the agreements under which the vacation pay was earned and failure to reach succeeding agreements. See Smith v. Kingsport Press, supra, 366 F.2d at 419-20. See also E.L. Wiegand Division v. NLRB, 650 F.2d 463, 468-69 (3d Cir.1981) (discussing characteristics of accrued benefits), cert. denied, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).
 
 
 13
 To be sure, it appears that the parties contemplated an employment relationship extending beyond the period covered by the expired 1976-79 agreements. We note that the agreements provide for disbursement of vacation pay on the day before vacation. Similarly, according to the stipulation, under the agreements vacation earned in one calendar year is to be "taken and paid" in the following calendar year. We have determined, however, that 1980 vacation pay had been accrued as compensation for work performed in 1979. The existence of language in the agreements indicating an expectation that the employees would continue to work for Meier, and would thus receive vacation pay in conjunction with a vacation, does not constitute an additional condition of vacation pay eligibility. Instead, this language simply establishes the method of distributing earned vacation pay.
 
 
 14
 By the same token, we reject Meier's argument that, since a reduction in 1980 vacation pay was a subject of collective bargaining, failure to reach agreements covering this topic relieved the company of its obligation for 1980 vacation pay. Meier points out that vacation pay provisions of new agreements would have been retroactive to June 30, 1979, and contends that as a consequence its 1980 vacation pay obligation could have been altered. We will assume for the sake of discussion that 1980 vacation benefits were bargained over, although there is some disagreement on this point. In any event, no agreements compromising 1980 vacation pay were reached. As a result, by working in 1979 the employees became entitled fully to vacation pay when they met all requirements imposed by the 1976-79 agreements. The fact that the parties have bargained to impasse over provisions to be included in a new collective bargaining agreement does not necessarily deprive the employees of rights that have accrued under an expired agreement. See United Steelworkers of America v. Fort Pitt Steel Casting Division, Conval-Penn, Inc., 635 F.2d 1071, 1079 (3d Cir.1980), cert. denied, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981).
 
 
 15
 Finally, we are satisfied that Meier's past practice under the 1976-79 agreements is consistent with the result we reach. Meier disbursed vacation pay in 1979, both before and after the strike began. It has been stipulated that the employees qualified for this vacation pay by working in 1978. Meier's distribution of vacation pay in 1979 thus comports with the conclusion that vacation pay constituted accrued compensation for work previously performed. In particular, payment of vacation pay after the strike began, and hence at a time when no agreements were in effect, directly contradicts Meier's contention that disbursement of vacation pay depended on the concurrent existence of effective agreements.
 
 
 16
 In sum, the language of the agreements, the applicable legal principles, and the past practice of the parties under the agreements indicate that the disputed 1980 vacation pay is accrued compensation for which Meier is obligated. Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska, sitting by designation