**CHAUFFEURS, TEAMSTERS AND HELPERS, LOCAL UNION 238, Appellant,**

**v.**

**C.R.S.T., INC. (sic), Appellee.**

**No. 85–1301.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1985.

Decided Dec. 30, 1985.

Rehearing En Banc Granted March 21, 1986.

Neil A. Barrick, Des Moines, Iowa, for appellant.

Robert E. Konchar, Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

Chauffeurs, Teamsters and Helpers, Local Union 238 (Union) brought suit in Iowa state district court seeking an order compelling CRST, Inc. (CRST) to submit a grievance filed by Jerry Ottaway, a CRST, employee and Union member, to procedures set out in an expired collective bargaining agreement. Federal jurisdiction over this dispute exists pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1947). Upon removal to federal court pursuant to 28 U.S.C. § 1441 (1976), CRST moved for summary judgment, which the district court[1] granted. The Union appeals. We reverse and direct the district court to enter an order requiring CRST to submit the dispute to the grievance procedure.

From July 1, 1979 through June 30, 1982, CRST employed truck drivers under a collective bargaining agreement between it and the Union. The parties entered into negotiations prior to the contract's expiration, but were unable to agree on the new contract's terms. In December 1982, CRST notified its employees that an impasse had been reached and that it was unilaterally implementing a schedule of wages, hours and other terms and conditions of employment consistent with its final offer to the Union, effective December 27, 1982. The schedule contained no express grievance procedure. However, the schedule did provide:

Section 2. Seniority List

\* \*. \* \* \* \*

Protest to any employee's seniority date or position on the list must be made in writing to the employer within thirty (30) calendar days after such seniority date or position first appears, and if no protests are timely made, the dates and positions posted shall be deemed correct. Any such protest which is timely made may be submitted to *the* grievance procedure. (our emphasis)

In July 1983, Jerry Ottaway, a truck driver, was discharged by CRST following an accident for which CRST determined he was responsible. He submitted a grievance, contending that he was discharged without just cause. The Union attempted to pursue the grievance to arbitration, following the grievance procedure prescribed in the expired agreement. CRST refused to arbitrate the grievance on the grounds that it had not agreed to be bound to any grievance or arbitration procedure other than as provided in its unilateral schedule for seniority purposes. The Union asserts that the existence of a grievance procedure may be inferred because CRST's unilateral schedule allowed for resolving seniority disputes through "the grievance procedure." Without the existence of some sort of grievance process, this language would be superfluous. Moreover, as no procedure had been settled on by the parties, the Union alleges that the procedure in the expired agreement remains in force. The Union also argues that the existence of a grievance procedure can be inferred because CRST represented that the unilateral schedule was consistent with CRST's final

[1]. The Honorable Edward J. McManus, Senior United States District Judge for the Northern District of Iowa.

offer and that a grievance procedure was a part of this last offer.

█ In reviewing a district court's grant of summary judgment, this court applies the same standard as that used by the district court in granting the motion. *Mandel v. United States,* 719 F.2d 963, 965 (8th Cir.1983). Summary judgment is proper only when there is no genuine issue of material fact so that the case may be decided as a matter of law, and on appeal the non-movant must be given the benefit of every favorable inference that may be drawn from the evidence. Fed.R.Civ.P. 56(c); *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984). It is also well settled that the arbitrability of a particular labor dispute is a question of law for the courts to decide. *Brotherhood of Painters and Allied Trades of America, Glaziers & Glass Workers Local Union No. 558 v. Lord & Burnham Construction Corp.,* 705 F.2d 998, 999 (8th Cir.1983). The Union has presented no affidavits contradicting the facts as established by CRST. The inferences drawn by the Union from those facts do not demonstrate a genuine issue of material evidentiary fact, but instead illuminate the ultimate legal issues to be resolved. Though the district court, therefore, properly proceeded to reach the case's merits, the question before us now is whether the district court erred in its resolution of the merits.

█ As a general rule, the duty to arbitrate is a creature of the collective bargaining agreement and a party cannot be compelled to arbitrate any matter in the absence of a contractual obligation to do so. *Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL–CIO,* 430 U.S. 243, 250, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977). An employer may not be required to arbitrate a grievance that arises after the expiration of a collective bargaining agreement when the event complained of does not occur before the termination of the contract nor relates to any rights arising under the expired agreement. *See, e.g., O'Connor Co., Inc. v. Carpenters Union No. 1408 of the United Brotherhood of Carpenters &* *Joiners of America, AFL–CIO,* 702 F.2d 824, 825 (9th Cir.1983); *Diamond Glass Corp. v. Glass Warehouse Workers and Paint Handlers Local Union 206,* 682 F.2d 301, 303–04 (2d Cir.1982). Although it is clear that once impasse in negotiations has been reached, an employer has the right to unilaterally institute terms and conditions of employment and in doing so is not bound to those contained in the expired agreement, courts have also recognized that an employer may act unilaterally after impasse only if its action is reasonably comprehended within its preimpasse bargaining proposals. *United Steelworkers of America, AFL–CIO v. Fort Pitt Steel Casting Division-Conval-Penn, Inc.,* 635 F.2d 1071, 1078 (3rd Cir.1980) (citing *NLRB v. Crompton-Highland Mills, Inc.,* 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320 (1949) ).

█ Federal labor policy favors arbitration as the method for resolving disputes related to collective bargaining agreements and there is a presumption that parties intend arbitration provisions to survive the expiration of agreements as to disputes which arise under a contract. *Nolde,* 430 U.S. at 254–55, 97 S.Ct at 1073–74. *Nolde* involved an issue as to whether a dispute over severance pay was arbitrable after the expiration of a collective bargaining agreement. The Supreme Court found the dispute arbitrable on the grounds that it arose out of the terms of the expired contract. The Supreme Court further observed in *Nolde* that

in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract. * * * While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration.

*Nolde,* 430 U.S. at 253–54, 97 S.Ct. at 1973.

█ Despite the employer's recognized right to act unilaterally after impasse, it is equally clear that the employment relation-

ships which arise under a contract do not exist separate from it in a vacuum totally void of other relevant circumstances but continue even after the contract's termination. *Richardson v. Communication Workers of America,* 443 F.2d 974, 978 (8th Cir.1971), *cert. denied,* 414 U.S. 818, 94 S.Ct. 38, 38 L.Ed.2d 50 (1973). This court emphasized in *Richardson* that

> the collective bargaining agreement is not an ordinary contract but rather, in a sense, agglomerates a variety of rights and methodology relating to the employer, the union, and the employees.

\* \* \* \* \* \*

The expiration date of a bargaining contract does not place the employee in jeopardy of losing his job at the termination of the agreement. In fact one of the very incentives to union representation is job security. The employee, the union which represents him, the company which employs him, each contemplate [sic] a "subsisting" contractual relationship for an indefinite period of time. Cox, The Legal Nature of Collective Bargaining Agreements, 57 Mich.L.Rev. 1 (1958). Note, 61 Column.L.Rev. 1363 (1961) [sic].

\* \* \* \* \* \*

The collective bargaining agreement in addition recognizes seniority rights, which \* \* \* affect vacation pay, severance pay, pension rights and the expectancy not to be laid off during slack periods of work. It has been recognized that many of these rights may survive the termination of the agreement.

*Richardson,* 443 F.2d at 978–79 (citations omitted). It may reasonably be argued that the dispute involved here, that Ottaway not be discharged without "just cause" as provided in the collective bargaining agreement, is as much a continuing right vested under the contract as was the right to severance pay in *Nolde.*

■ However, we need not decide whether the facts of *Nolde* are on all fours with this case and controlling here. We find an even more persuasive reason why Ottaway's discharge should be submitted to the grievance process. The undisputed facts of the case at bar are distinguishable from cases which involve only the question of what terms and conditions survive an expired collective bargaining agreement after impasse. CRST here unilaterally implemented a schedule of terms and conditions of employment "consistent with its final offer" in which CRST included a reference to "*the* grievance procedure" (our emphasis). At issue here, then, is the meaning to be drawn from CRST's reference in its unilateral schedule to "the" grievance procedure.

In construing this unilaterally implemented term, we find instructive our reasoning in *Taft Broadcasting Co., WDAF AM–FM–TV v. NLRB,* 441 F.2d 1382 (8th Cir.1971). In *Taft,* a draft collective bargaining agreement remained unsigned by the Union due to claimed discrepancies in the version presented to it for execution. The employer then sent a letter to the union advising that it intended to unilaterally implement wages, hours, and other terms and conditions of employment as set forth in the draft agreement, and would continue handling grievances that arose in the future in accordance with the procedure set forth in the draft. When the union later filed a grievance on behalf of an employee discharged after this unilateral imposition of working conditions, the employer refused to arbitrate on the grounds that the duty to arbitrate arises only out of a contract and that no executed contract between the employer and the union existed. This court disagreed, noting that the NLRB had found the employer's letter to be an interim agreement in which the ambiguous terms regarding arbitration were to be construed against the employer as the drafter of the agreement. *Taft,* 441 F.2d at 1384.

The district court in its memorandum order granting summary judgment to CRST did recognize that CRST's unilateral schedule could be seen to constitute a contract between CRST and the Union. However, in reaching its conclusion that the only grievable matters under the schedule are seniority dates and positions, the dis-

trict court failed to apply the principle of judicial construction of labor contracts, articulated in *Taft*, that ambiguities in contract provisions are to be construed against the drafter, with all reasonable doubts as to interpretation resolved in favor of the other party. *See Taft*, 441 F.2d at 1384; *cf. Ross v. Royal Globe Insurance Co.*, 612 F.2d 379, 381 (8th Cir.1980) (given possible conflicting interpretations of a contract provision, the district court should adopt the construction which most favors the party who had no part in preparing the contract).[2]

Whatever CRST's intent, the schedule's silence as to the submission of other issues besides seniority to the grievance procedure rendered the schedule ambiguous, and compels us to conclude that the schedule did not preempt Ottaway's discharge from being subject to a grievance procedure. *Cf. Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370, 375 (8th Cir.1983) (court's function in construing a contract is to determine the parties' intent from what is said and not from what they meant to say); *see also Minot Builders Supply Association v. Teamsters Local 123*, 703 F.2d 324, 327–28 (8th Cir.1983) (discharge was arbitrable where collective bargaining agreement did not state explicitly that discharges are not subject to arbitration; doubts regarding arbitrability should be resolved in favor of coverage). It seems clear from an analysis of CRST's reference to "the grievance procedure" in the unilateral schedule that CRST intended to retain a grievance procedure in its continuing relationship with the Union and the employees. The schedule nowhere express-

ly rejected the use of grievance procedures for issues other than seniority. As was persuasive in *Nolde*, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. *Nolde*, 430 U.S. at 255, 97 S.Ct. at 1074.

It should be borne in mind here that while the exact grievance and arbitration procedures proposed by the Union and CRST during contract negotiations differed, the inclusion of a grievance procedure in the final contract was itself never questioned.[3] As in *Taft*, CRST's unilateral schedule operates as an interim agreement retaining a grievance procedure for the resolution of disputes regarding terms and conditions of employment. We think that this is especially true in a situation where impasse has been reached and the employer has unilaterally instituted a set of wages, hours and other working conditions purportedly consistent with a "final offer."[4] Notwithstanding CRST's claims to the contrary, we find that CRST's intent at the time it implemented the interim schedule was to continue using a grievance procedure for resolving disputes to the same extent contemplated by the expired contract.

CRST thus created a duty to submit disputes arising under the interim schedule regarding terms and conditions of employment to a grievance procedure by its representation that it was implementing working conditions consistent with its final offer to

**2.** This court has also stated, in the context of interpreting the terms of an ERISA plan, that "where one of the parties draws a contract and the other * * * cannot vary the terms, the burden is upon the party drawing the contract to make the meaning plain." *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344, 1354 (8th Cir.1980) (citations omitted).

**3.** The record is replete with references to the grievance procedure proposals advanced by both parties during negotiations. For example, the August 31, 1984 affidavit of Lawrence B. Pollard, a Director of Industrial Relations for CRST during the period in question, states that

"proposals by the company spelled out grievance machinery which only included final and binding arbitration. [The union proposed a different procedure.] Neither grievance procedure was the same as that contained in the expired collective bargaining contract."

**4.** This court has previously noted that a grievance or arbitration procedure is a term or condition of employment, *NLRB v. Independent Stave Co., Diversified Industries Division*, 591 F.2d 443, 446 (8th Cir.1979), *cert. denied*, 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979) (citing *Taft Broadcasting Co., WDAF AM–FM–TV v. NLRB*, 441 F.2d 1382 (8th Cir.1971) ).

the Union. This conclusion is supported by CRST's failure to expressly exclude from the scope of the grievance procedure all issues except seniority. Our conclusion is further reinforced by the Supreme Court's observation that:

> [t]he contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.

*Nolde*, 430 U.S. at 254, 97 S.Ct. at 1073. CRST's reference in the schedule to a grievance procedure indicates that at the time CRST implemented the unilateral schedule, it contemplated that, for at least an interim period, employer-employee friction over working conditions would be resolved by a method of dispute resolution other than lawsuits.[5]

■ In view of our conclusion that the unilateral schedule's ambiguous terms should be construed against the drafter, we hold that the district court erred in finding

that the schedule's grievance procedure clause applied only to seniority disputes.[6] Our construction, urged on this court by the Union, does not interfere with CRST's right to act unilaterally after bargaining has reached an impasse, but merely holds CRST to the reasonable meaning of an ambiguous term it chose to incorporate in its unilateral schedule.

The grant of summary judgment on behalf of CRST is reversed and the district court is instructed to enter judgment for the Union requiring the dispute to be submitted to the grievance process.

HENLEY, Senior Circuit Judge, concurring and dissenting.

I concur with the court's finding that there is no genuine issue of material evidentiary fact and that the case is a proper one for summary judgment. However, I believe also that the district court properly resolved the merits of the case, and that its judgment should be affirmed.

Relying largely upon *Nolde Bros. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), and the alleged ambiguity of the language found in CRST's unilateral schedule of hours and wages, the court today finds a duty to arbitrate.

Heavy reliance is placed on the presumption stated in *Nolde* that parties to a labor contract intend arbitration provisions to survive the expiration of the agreement. However, very little in the facts here sup-

---

5. Although the record is not complete, we note that the Union alleges in its complaint that CRST initially agreed to submit the dispute to the grievance procedure prescribed under the expired contract, which involved a hearing before the Iowa State Joint Area Committee at its monthly meeting in November, 1983. CRST and the Union appeared at that time, but prior to commencing the hearing CRST renounced its intent to submit to the grievance committee process on the grounds that the contract, and CRST's duty under the contract to process grievances, had expired.

6. On December 5, 1985, a panel of this court decided *Garland Coal & Mining Co. v. United Mine Workers of America, et al.*, 778 F.2d 1297

(8th Cir.1985). The panel in *Garland*, relying on specific provisions of the collective bargaining agreement and the parties' bargaining history, affirmed the trial court's conclusion that only disputes based on events occurring while the expired contract was still in effect were arbitrable. However, the reasoning in *Garland* is inapposite to the facts presented before us now. In *Garland*, a bargained-for contract clause provided by clear implication that the parties did not intend that post-expiration grievances would be arbitrable. Here, no similar clause may be found in the parties' expired contract. In addition, in *Garland* there existed no post-impasse unilateral employer schedule which continued or reimplemented a post-expiration grievance procedure as is the case here.

ports the use of this presumption. In the affidavits submitted with its motion for summary judgment, CRST established that: (1) there was no agreement between the parties as to how to handle grievances after the expiration of the collective bargaining agreement; (2) during the negotiations both sides proposed grievance procedures which were different from those in the expired agreement; (3) the December, 1982 schedule provided for a grievance procedure only in limited circumstances; and (4) CRST had rejected all attempts by the Union to arbitrate grievances.

Moreover, the majority's misplaced reliance on this presumption pays no more than lip service to the obverse rule of law that a party cannot be forced into arbitration in the absence of a contractual obligation. *Id.* at 250, 97 S.Ct. at 1071.

The facts do not appear to involve rights of an employee arising under the contract. Here is involved a dispute over whether Ottaway should have been discharged because the company found he was responsible for an accident which occurred over a year after the termination of the basic agreement. In *Nolde* and other cases where a right to arbitration has been found after the expiration of an agreement, the grievance has involved rights which to some degree vested or accrued during the life of the contract, and merely ripened after termination. *See id.* at 249, 97 S.Ct. at 1070 (severance pay); *Glover Bottled Gas Corp. v. Local Union No 282, International Brotherhood of Teamsters*, 711 F.2d 479, 482 (2d Cir.1983) (discharge of employees arbitrable where all acts leading to discharge occurred before termination of contract); *Federated Metals Corp. v. United Steelworkers*, 648 F.2d 856, 861 (3d Cir.) (dealt with pension plan rights), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *United Steelworkers v. Fort Pitt Steel Casting Division-Conval-Penn, Inc.*, 635 F.2d 1071, 1075, 1079 (3d Cir.1980) (dealt with severance pay, vacation pay, life insurance coverage, and pension plan rights), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981); *cf.*

*Teamsters Local Union 688 v. John J. Meier Co.*, 718 F.2d 286 (8th Cir.1983) (employees entitled to vacation pay because eligibility requirements met before expiration of agreement).

The court here attempts to apply *Nolde* by stating that this dispute involves a continuing right, Ottaway's right not to be discharged without just cause. But the right to be discharged for just cause is dissimilar to severance pay and vacation pay. An employee cannot work towards it or accumulate it over time. It is strictly a creature of the employment contract and its life should not extend beyond contract expiration. *See County of Ottawa v. Jaklinski*, 423 Mich. 1, 377 N.W.2d 668 (1985).

Next, I would note that the passage of more than a year between the expiration of the contract and the employee's discharge further erodes confidence in using here any presumption of arbitrability. The Court in *Nolde* limited its holding by stating that "we need not speculate as to the arbitrability of post-termination contractual claims which, unlike the one presently before us, are not asserted within a reasonable time after the contract's expiration." *Nolde*, 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8.

Under the majority's analysis it is difficult to comprehend any right which would not be a continuing right. This would give a much broader meaning to the words "arises *under* the contract," *id.* at 249, 97 S.Ct. at 1070, than I believe the *Nolde* Court ever intended.

I also believe the majority has erred in finding that CRST's unilateral schedule is ambiguous as to grievance procedures.

It is asserted that because CRST's unilateral schedule mentions a right to submit seniority disputes to arbitration, and is silent as to what other rights may be submitted, the schedule is ambiguous. I see no ambiguity whatever. Rather, this clear statement shows explicitly how far CRST intended arbitration to reach. If it had intended arbitration to reach further, it could have so stated.

Nor can I agree with the court that "[a]s in *Taft*, CRST's unilateral schedule operates as an interim agreement retaining a grievance procedure for the resolution of disputes." *See supra* at 383. The letter in *Taft Broadcasting Co. v. NLRB*, 441 F.2d 1382 (8th Cir.1971), which was found to be an interim agreement stated "it is our intention to continue in effect the wages, hours, and other conditions of employment presently in effect as fully set forth in the draft of June 22, 1966, and we will continue handling any grievances that may arise in accordance with the procedure set forth therein." *Id.* at 1383. This distinguishes *Taft* from the case at hand because here CRST's unilateral schedule does not broadly agree to arbitrate all controversies, but rather only disputes concerning seniority.

Finally, I take the majority to task for its attempt to distinguish *Garland Coal & Mining Co. v. United Mine Workers*, 778 F.2d 1297 (8th Cir.1985), from this case. *See supra* at 384 n. 6. The majority states that in *Garland* there was not a unilateral schedule "which continued or reimplemented a post-expiration grievance procedure as in the case here." *Id.* This type of analysis simply begs the question to be decided.

As indicated, I would affirm.