GARLAND COAL & MINING COMPANY, Appellee,

v.

UNITED MINE WORKERS OF AMERICA, Appellant.

DISTRICT 21, UNITED MINE WORKERS OF AMERICA; Local 1285, United Mine Workers of America; Local 1329, United Mine Workers of America; Local 2071, United Mine Workers of America; Local 2428, United Mine Workers of America,

v.

TOLTEC COAL COMPANY and Great Western Enterprises, Inc.

GARLAND COAL & MINING COMPANY, Appellee,

v.

UNITED MINE WORKERS OF AMERICA DISTRICT 21, United Mine Workers of America; Appellant,

Local 1285, United Mine Workers of America; Appellant,

Local 1329, United Mine Workers of America; Appellant,

Local 2071, United Mine Workers of America; Local 2428, United Mine Workers of America, Appellants,

Toltec Coal Company and Great Western Enterprises, Inc.

GARLAND COAL & MINING COMPANY, Appellant,

v.

UNITED MINE WORKERS OF AMERICA DISTRICT 21, United Mine Workers of America; Local 1285, United Mine Workers of America; Local 1329, United Mine Workers of America; Local 2071, United Mine Workers of

America; Local 2428, United Mine Workers of America, Appellees,

v.

TOLTEC COAL COMPANY and Great Western Enterprises, Inc.

Nos. 84-2464, 84-2465 and 84-2529.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1985.

Decided Dec. 5, 1985.

August Randall Vehar, Washington, D.C., for United Mine Workers of America.

William C. Nulton, Kansas City, Mo., for Garland Coal & Mining Co.

Before HEANEY and BOWMAN, Circuit Judges, and WANGELIN,* Senior District Judge.

HEANEY, Circuit Judge.

The United Mine Workers of America (UMWA) appeals from an order of the district court, 596 F.Supp. 747 (D.C.Ark.1984), holding that Garland Coal & Mining Company has no contractual duty to arbitrate grievances which arose after the parties' collective bargaining agreement expired. The UMWA also appeals from an order dismissing its counterclaims and third-party complaint. Garland cross-appeals the district court's order holding that pre-contract expiration grievances are no longer arbitrable. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings.

## I. FACTS.

From March 27, 1978, to March 27, 1981, a collective bargaining agreement (the "1978 Agreement") was in effect between Garland and the UMWA and various local UMWA unions (collectively, the "Union"). On January 12, 1981, the UMWA notified Garland of its intention to terminate the 1978 Agreement as of March 27, 1981, and to negotiate a new agreement. The parties apparently failed to agree on a new contract, and Garland's UMWA employees went on strike. Shortly before and after the contract expired on March 27, 1981, Garland discharged a number of its "striking" employees.

At the time the 1978 Agreement expired, several grievances were pending under its five-step grievance/arbitration procedure. On April 8, 1981, Garland notified the Union that the Company would no longer arbitrate grievances. In May of 1981, the Union filed a charge with the NLRB that Garland's repudiation of the arbitration procedure was unlawful for two reasons. First, with respect to grievances arising prior to expiration, the Union claimed that Garland's repudiation violated the parties'

contractual agreement to arbitrate disputes arising under the contract. Second, with respect to grievances arising after expiration, the Union claimed that Garland had violated section 8(a)(5) of the Labor Management Relations Act, 29 U.S.C. § 158(a)(5), by repudiating the arbitration procedures before bargaining to impasse.

In early 1982, the NLRB Regional Director executed a settlement with Garland which provided in part:

> WE WILL upon request bargain collectively concerning * * * rates of pay, hours of work, and other terms and conditions of employment, including rejection of proffered insurance premium checks under prevailing grievance and arbitration procedure.

*Garland Coal & Mining Co.*, NLRB Case No. 16–CA–9839.

Notwithstanding the settlement agreement, Garland continued to refuse to arbitrate any grievances. On June 30, 1982, the NLRB Regional Director set aside the settlement agreement and issued a complaint alleging that Garland had violated the National Labor Relations Act by refusing to process and arbitrate grievances and by refusing to provide relevant information regarding the interconnections between Garland and two companies—Great Western, Inc., and Toltec Coal Company— that the Union claimed were "alter egos" of or successors to Garland and bound by the 1978 Agreement. *Garland Coal Mining Co.*, NLRB Consolidated Case Nos. 16–CA–9839 and 16–CA–10442.

Meanwhile, the trustees of the United Mine Workers of America 1950 Benefit Plan and Trust filed an involuntary bankruptcy petition against Garland. Acting under 11 U.S.C. § 362(a), the bankruptcy court stayed all litigation against Garland, including the proposed arbitrations and pending NLRB proceedings. Garland

---

* The HONORABLE H. KENNETH WANGELIN, Senior United States District Judge for the East-ern and Western Districts of Missouri, sitting by designation.

thereafter successfully opposed a union motion to lift this stay.[1]

In September, 1983, Garland filed this action in the district court. Count One seeks a declaratory judgment stating that Garland does not have a contractual obligation to arbitrate eleven grievances which allegedly arose after expiration (post-expiration grievances).[2] It also seeks an injunction. Count Two seeks an injunction and declaration that Garland has no obligation to arbitrate any grievances arising and filed before expiration,[3] or arising before but not filed until after expiration (pre-expiration grievances).[4]

The Union filed four counterclaims against Garland. Each counterclaim incorporates a third-party complaint against Great Western, Inc., and Toltec Coal Company, alleging that they are bound by the same contractual obligations to the Union as is Garland.

The district court dismissed the counterclaims and third-party complaint, granted the relief requested in Count One of Garland's amended complaint and denied that requested in Count Two. This appeal followed.

## II. DISCUSSION.

### A. The Post-Expiration (Count One) Grievances.

■■■■■ Having considered and rejected several preliminary arguments presented by the Union,[5] we turn to its primary argu-

---

1. On July 3, 1985, the United States Bankruptcy Court for the Western District of Arkansas, Fort Smith Division, denied the Union's motion to lift the stay and scheduled trial on the merits for September 19, 1985. This hearing has now been reset for November 19, 1985.

2. We affirm the district court's finding that only ten of these eleven grievances are post-expiration grievances. Three of these grievances (Complaint Attachments (C) 8–10) were filed on August 4, 1981, and allege that Garland failed to accept health insurance premiums tendered by striking employees pursuant to Article XXIX of the 1978 Agreement. An additional three grievances (C 5–7) were filed on March 6, 1982, and allege wrongful discharge of numerous Garland employees by mailgrams dated April 8 and 9, 1981. The final four post-expiration grievances (C 1–4) were filed on July 8, 1982, and claim that Garland violated Article One of the 1978 Agreement by selling certain of its operations without requiring the purchasing company to assume Garland's incumbent work force, including striking miners with pending grievances.

3. The record sets forth eight such grievances (PX D–K), whose allegations cover questions of seniority, layoffs, and rotation and posting of jobs.

4. The record contains four grievances of this type, (PX O–Q and U) which allege improper pre-expiration discharges of numerous workers at the Tamaha mine. These pre-expiration grievances apparently are the most significant grievances pending.

5. First, we reject the Union's argument that the district court lacked jurisdiction over Count One of Garland's complaint because the Union never claimed that the post-expiration grievances must

be submitted to arbitration as a matter of *contractual* right. It alleges that its claim that post-expiration disputes are arbitrable is based solely on statutory right, 29 U.S.C. § 158(a)(5), and that this issue was within the exclusive jurisdiction of the NLRB. We agree that the statutory claims are for the NLRB to decide. However, we find substantial evidence in the record to support the district court's finding that the Union, by its words and actions, had implied a contractual basis for arbitrating post-contract grievances. *See* Union's Supplemental Amended Complaint Count Three.

Next, we find without merit the Union's claim that the district court abused its discretion by retaining jurisdiction because, if the court had dismissed the action in favor of the NLRB forum, it would have discouraged forum shopping, promoted judicial economy, and provided the best comprehensive solution of the general conflict. 10 Wright & Miller § 2758 at 779 n. 4. Similarly, the Union argues that Garland's opposition to lifting the automatic bankruptcy stay should, in effect, estop it from asserting that this court action was necessary because of delays in the NLRB proceedings. Although the Union's arguments have some merit, we find that this contractual dispute may be viewed as autonomous from the statutory issues before the NLRB, *see* 596 F.Supp. at 757, and that the district court did not abuse its discretion in retaining jurisdiction over the contractual issues. *See* § 301 of the LMRA, 29 U.S.C. § 185.

We have also considered and reject the Union's argument that the trial court, in construing the 1978 Agreement, abused its discretion by considering negotiating proposals made in 1981. *See, e.g., Holly Sugar Corp. v. Distillery Workers,* 412 F.2d 899 (9th Cir.1969). It is clear that the trial court primarily relied on the express wording of the 1978 Agreement and merely sup-

ment—that the trial court erred in holding that the post-expiration grievances are not arbitrable. The relevant standard for deciding this issue is set forth in *Nolde Bros. v. Local 358, Bakery & Confectionary Workers*, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977). Under *Nolde Bros.*, post-expiration grievances[6] which arise under[7] a contract containing an arbitration clause are arbitrable unless "the presumptions favoring arbitrability * * * [are] negated expressly or by clear implication." 430 U.S. at 255, 97 S.Ct. at 1074. Although it is a close issue, we find that the district court did not clearly err, *see Anderson v. Bessemer City*, — U.S. —, —–—, 105 S.Ct. 1504, —, 84 L.Ed.2d 518, 528–29 (1985), in finding that the duty to arbitrate *post*-expiration grievances was negated by clear implication.

■ First, unlike the broad provision at issue in *Nolde Bros.* which required arbitration of " 'any grievance' arising between the parties," 430 U.S. at 245, 97 S.Ct. at 1068, Article XXIII of the 1978 Agreement applies only to "disputes arising under this Agreement." Although disputes arising after contract expiration may arise under that contract, *id.* at 249, 97 S.Ct. at 1070, other provisions of the 1978 Agreement and the parties' bargaining history support the trial court's conclusion that "disputes arising under this Agreement" refers only to disputes based on events which occurred while the contract was still in effect.

Second, the trial court concluded that Article XXIII, Section (K), clearly implied

that the duty to arbitrate ended with contract expiration. That Article provides, in relevant part, that

> [a]ny dispute and/or difference which as of the effective date of this agreement *is in the process of adjustment under the Settlement of Disputes section of the prior agreement* or any dispute and/or difference presented on or after the effective date of this Agreement which is based on the occurrence or nonoccurrence of an event which arose prior to the effective date of this Agreement *shall be processed under the procedural provisions of this Agreement* and shall be *resolved under the applicable provisions of the prior Agreement.* (Emphasis added.)

The Union points out that this provision was negotiated after a 111-day contract hiatus and strike between the 1974 and 1978 Agreements, and was intended to insure that all grievances which were still in the process of adjustment under the prior 1974 Agreement would be arbitrated under the new *procedures* established by the 1978 Agreement. We agree with the Union that this provision does not clearly imply that the duty to arbitrate *all disputes* ended with contract expiration. However, we agree with Garland and the trial court that Section K's language "or any dispute and/or difference presented on or after the effective date of this Agreement which is based on the occurrence or nonoccurence of an event which arose prior to the effective date of this Agreement" suggests that the

ported its conclusion by citing statements made in 1981. We also find no abuse of discretion in the district court's exclusion of the Union's evidence regarding the alleged views of the negotiators of the 1978 Agreement. Next, we reject the Union's argument that the trial court failed to address its "termination" argument. It is clear the International Union had the power to, and did, terminate the 1978 Agreement as it applied to District 21. We also find no error in the trial court's failure to address the Union's argument that Garland took several actions before and after expiration which created a new contractual obligation to arbitrate post-expiration grievances. The NLRB is the proper forum for raising this argument because it is based in substantial part on an alleged violation of a

settlement agreement approved by an NLRB Regional Director.

**6.** A post-expiration grievance is one "which is based on events that occur after [contract] expiration." *Nolde Bros.*, 430 U.S. at 253, 97 S.Ct. at 1073.

**7.** In *Nolde Bros.*, the Court stated that "the dispute * * * although arising *after* the expiration of the collective bargaining contract, clearly arises *under* the contract," because resolution of the dispute requires an interpretation of the contract. 430 U.S. at 249, 97 S.Ct. at 1071. Neither party disputes that the post- or pre-expiration grievances at issue here arise under the 1978 Agreement.

parties believed that, absent this provision, there was no contractual obligation to arbitrate disputes which were based on events occurring after the 1974 Agreement expired but before the 1978 Agreement became effective. Because the 1978 Agreement contains no similar provision with respect to disputes which might arise after expiration of the 1978 Agreement and prior to a new agreement, the implication arises that the parties did not intend that post-expiration grievances would be arbitrable. Of similar import is that, during negotiations for a new agreement after the 1978 Agreement expired, the Union unsuccessfully sought a new provision like that contained in Article XXIII, Section (K), of the 1978 Agreement. We find that the trial court did not clearly err in finding that this provides additional support for the conclusion that the parties did not intend that post-expiration grievances would be arbitrable as a matter of contractual right.

Third, Article XXIX, third paragraph, indicates that, when the parties desired to do so, they were able to find words to express an intent for one particular provision of the 1978 Agreement to "survive the termination of the remainder of this Agreement." The parties' failure to provide that post-contract expiration grievances would be arbitrable suggests, in conjunction with the other evidence, that the parties did not intend that post-contract expiration disputes would be arbitrable.

Fourth, Article XXIII, Section (b)(1) of the 1978 Agreement, provides that designated arbitrators "shall serve for the duration of this Agreement." The trial court concluded that this clause reflected the parties' intent that the duty to arbitrate ended with contract expiration. We need not go that far; it may be that the parties intended that arbitrators would continue to serve to complete decisions on grievances which arose while the contract was still in effect. We find, however, that the trial court did not clearly err in finding that this clause implies that post-expiration grievances would not be arbitrable. The NLRB's decision in *S & W Motor Lines, Inc.*, 236 NLRB 938, 949–50 (1978), lends support to this conclusion. In that case, the Board held that the employer did not violate section 8(a)(5) of the LMRA, 29 U.S.C. § 158(a)(5), when it refused to arbitrate post-expiration grievances. The *Nolde Bros.* presumption was negated by a provision in that agreement which provided that an arbitration committee would serve only "during the term of this contract agreement." Of similar import in the case at hand is that during negotiations for a new contract to replace the 1978 Agreement, the Union unsuccessfully sought a provision that "[a]rbitrators appointed under the prior agreement shall serve as district arbitrators until arbitrators can be selected."

Finally, it is of some significance that the Union claims that it has never sought arbitration of post-expiration disputes as a matter of contractual right. Although we have stated that this claim is sufficiently debatable to create a case or controversy to establish jurisdiction, it is clear that the Union has primarily relied on section 8(a)(5) of the LMRA, 29 U.S.C. § 158(a)(5), as support for its argument that post-expiration disputes are arbitrable. We express no view on whether section 8(a)(5) grants such a right, but leave this issue for the NLRB to decide.

■ In sum, we find that the trial court did not clearly err in finding that the duty to arbitrate post-expiration grievances was negated by "clear implication." Accordingly, we affirm the district court's issuance of a declaratory judgment to this effect. The Union argues, however, that the trial court erred in *enjoining* it from seeking arbitration of post-expiration grievances in the NLRB proceeding on a contractual basis theory because (1) the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, allegedly prohibits such injunctions, and (2) the injunction is overly broad because it allegedly bars the Union from litigating before the NLRB its theory that Garland took several actions which created a new contractual obligation to arbitrate post-expiration grievances. We agree with the latter point and, thus, need not reach the Norris-La-

Guardia Act argument. Enjoining the Union from raising its "new contract" argument with respect to post-expiration grievances might bar the NLRB from fully analyzing the issues before it. Garland will be sufficiently protected from relitigation of issues already decided by the doctrine of collateral estoppel.

### B. The Pre-Expiration (Count Two) Grievances.

■ Garland argues that the district court erred in holding that pre-expiration grievances are arbitrable. We disagree because we find that this issue is squarely controlled by the Supreme Court's decisions in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), and *Nolde Bros.*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). In *Wiley*, the employer argued that its duty to arbitrate the pre-contract expiration dispute expired when the contract expired. The Court rejected this argument, holding that because the dispute occurred prior to expiration of the contract, the duty to arbitrate attached to that dispute. 376 U.S. at 554–55, 84 S.Ct. at 916–17. In *Nolde Bros.*, the employer argued that the termination of the collective bargaining agreement automatically extinguished its duty to arbitrate grievances. The Court rejected this argument, stating that:

> Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum. 430 U.S. at 251.

Garland points out that the duty to arbitrate is created by contract, and argues that the finding that the parties did not intend post-expiration grievances to be arbitrable necessarily means that pre-expiration grievances are not arbitrable. We disagree. In *Wiley*, the Court stated that "[a]lthough the duty to arbitrate * * * must be founded on a contract, the impressive policy considerations favoring arbitration are not wholly overborne by the fact that Wiley did not sign the contract being construed." 376 U.S. at 550, 84 S.Ct. at 915. Because the duty to arbitrate pre-expiration disputes is so firmly established, we think this duty could be extinguished only by a very clear expression in the contract to the contrary. We need not decide how clear this contractual expression need be because we find that the trial court did not clearly err in finding that there is no sufficiently clear expression in the 1978 Agreement or related evidence. Accordingly, we affirm the district court's denial of Garland's request for a declaratory judgment on the Count Two grievances, and agree with the district court that the Count Two pre-expiration grievances are arbitrable.

### C. Counterclaims and Third-Party Complaint.

The district court dismissed the Union's counterclaims and third-party complaint on the ground they "were filed without consent of the Court * * * [and] more importantly, it drastically changed the nature of the lawsuit and the parties to it." 596 F.Supp. at 756. The Union argues that its counterclaims and third-party complaint were timely because they were filed in its first answer to Garland's amended complaint, and because the court never ruled or gave notice of its intent to not rule on the Union's motion for a more definite statement as to Count Two. *See* Fed.R.Civ.P. 12(a) and 13(a) and (b). Although the district court's order is, in some degree, a justifiable response to the parties' refusal to narrow the issues and subjects of discovery within reasonable boundaries, we agree with the Union that its counterclaims and third-party complaint were timely filed and that the district court should have considered them. *See Montecatini Edison,*

*S.P.A. v. Ziegler,* 486 F.2d 1279, 1282 (D.C. Cir.1973). The Union's counterclaims and third-party complaint did not drastically change the nature of the lawsuit. To the contrary, they were necessary for resolution of the issues before the court.

■ The Union's third-party complaint alleges that Great Western, Inc., and Toltec Coal Company are "alter egos" of or successors to Garland and are subject to the same contractual, statutory, and constitutional obligations to the Union as is Garland. The district court must address these claims without waiting for the lifting of the bankruptcy stay of all litigation against Garland. *See Austin v. UNARCO Industries, Inc.,* 705 F.2d 1, 5 (1st Cir.), *cert. dismissed,* 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). If the Union's theory of "alter ego" or "successorship" liability has merit, the district court could order against these companies whatever relief is justified on the Union's counterclaims and third-party complaint.

Consideration of the counterclaims presents a more difficult issue because there is a question whether consideration of the claims violates the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, which took effect when the UMWA's pension trust filed an involuntary bankruptcy petition against Garland. On July 3, 1985, the United States Bankruptcy Court for the Western District of Arkansas, Fort Smith Division, denied relief from the stay. The record does not reveal why the court denied the relief, and we are not aware whether an appeal from the bankruptcy court's order has been taken.[8] In any event, we are squarely faced with the question of whether the district court erred in dismissing the Union's counterclaims, and have no choice but to consider whether the automatic stay should be lifted as it applies to the counterclaims.

■ In deciding this question, we first note that national labor policy favors arbitration of labor disputes. Although there is some authority for the proposition that the section 362 stay applies to labor arbitrations, we find that, ordinarily, the bankruptcy court should lift the stay to allow the merits of labor disputes to be resolved through arbitration, but that the stay should be continued to prevent the execution of any judgment which would result in a taking of any property at issue in the bankruptcy proceeding. *Local 692, United Food and Commercial Workers Union, AFL–CIO v. Pantry Pride,* 522 F.Supp. 1009, 1014 (D.Md.1981). *See, e.g., In Re Central Hobron Associates,* 36 B.R. 106, 108 (Bankr.Hawaii 1983); *In Re: Sterling Mining Co.,* 21 B.R. 66, 67–68 (Bankr.W.D. Va.1982); *In Re: Smith Jones, Inc.,* 17 B.R. 126, 128 (Bankr.D.Minn.1981). *See also Nathanson v. National Labor Relations Board,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). Otherwise the bankruptcy court will be forced to decide complicated questions of labor law which it is not only ill-suited to decide but which would also violate national labor policy favoring settlement of labor disputes in the forum of the parties' choice. Once the arbitrator has decided the liability issue, the case should be returned to the bankruptcy court to decide the questions of allowability and priority of claims. *See In Re Adams Delivery Service, Inc.,* 24 B.R. 589, 593 (Bankr. 9th Cir.1982); *In Re D.M. Barber, Inc.,* 13 B.R. 962, 963, 965 (Bankr. N.D.Tex.1981). *See also Matter of Shippers Interstate Service, Inc.,* 618 F.2d 9 (7th Cir.1980).

There are two counterclaims before us in this case.[9] The Union's counterclaim number one requests the Court to order Garland to arbitrate the Count Two (pre-expiration) grievances. Our affirmance of the district court's finding that the pre-expiration grievances are arbitrable makes it

---

8. The Union could appeal from this decision as an appealable "final" order. *In Re Leimer,* 724 F.2d 744 (8th Cir.1984).

9. The Union's counterclaims numbers two and three have been mooted by our affirmance of the district court's findings that the pre-expiration grievances are arbitrable and the post-expiration grievances are not.

clear that the Union is entitled to an injunction ordering Garland to arbitrate these pre-expiration (Count Two) grievances. We remand to the district court for entry of such an order.

The Union's second counterclaim (counterclaim number four) contends that if the post-expiration grievances are not arbitrable, then the district court should exercise its jurisdiction under section 301 of the LMRA, 29 U.S.C. § 185, and consider whether Garland violated Article XXIX of the 1978 Agreement by refusing to accept health care premiums proffered by striking employees. *See* grievances C 8 through C 10. The district court must address the merits of this claim on remand.[10]

In sum, the district court on remand must consider the Union's third-party complaint, enter an injunction ordering arbitration of the grievances set forth in the Union's counterclaim number one, and consider the merits of counterclaim number four. Although the amount of monetary relief called for on the counterclaims should be determined, no monetary relief may be actually awarded on either of the counterclaims. Once the merits of the underlying claims have been resolved, the arbitrator, in the case of counterclaim number one, and the district court, in the case of counterclaim number four, shall return their findings to the bankruptcy court which shall then determine the allowability and priority of the Union's claims.[11]

### D. "Wildcat Strike Finding."

■ The Union argues that this Court should strike the district court's apparent factual finding that a "wildcat strike" occurred at the Tamaha mine on March 21, 1981, and that the Tamaha miners were "fired" on March 26, 1981. The Union contends that a previous order of the magistrate, adopted by the court, excluded this issue from trial. We agree and strike these wildcat strike "findings" from the record. These findings were not necessary for the district court's decision, and there is no evidence in the record to support (or contradict) this finding. This issue is before the NLRB and we leave its resolution for that tribunal.

### E. Conclusion.

In sum, we affirm the district court's finding and issuance of a declaratory judgment that Garland is not obligated by the 1978 Agreement to arbitrate the ten Count One post-expiration grievances (C 1–10 or PX L, M, N, R, S, T, U, W, X and Y).

We affirm the district court's finding that the Count Two pre-expiration grievances (PX D–K, O–Q and U) are arbitrable as a matter of contractual right.

We reverse the district court's dismissal of the Union's counterclaims and third-party complaint. The district court on remand must first consider whether there is merit to the Union's third-party complaint. If the Court finds that the "alter ego" or "successorship" allegations have merit, it should order Great Western and Toltec to arbitrate the pre-expiration grievances PX D–K, O–Q and U as set forth in Count One of the Union's counterclaim. The Court should then determine whether relief against Great Western and Toltec is justified on the Union's counterclaim number four, involving health insurance grievances, C 8 through C 10. Because Great Western and Toltec are not subject to the automatic bankruptcy stay of litigation, whatever judgment, if any, is called for may be entered against these companies.

If the court determines that the Union's "alter ego" or "successorship" allegations against Great Western and Toltec are without merit, then the court must order Gar-

---

10. Although these claims present a slightly different issue with respect to the bankruptcy stay, we find that the stay must also be lifted to allow the district court to consider the merits of these claims.

11. At the November 19, 1985, hearing on the pension trust's involuntary bankruptcy petition, if the bankruptcy court determines that Garland is not bankrupt, then the Union may seek the judgment, if any, ordered by the arbitrator on counterclaim number one, and ordered by the district court on counterclaim number four.

land to arbitrate the pre-expiration grievances set forth in the Union's counterclaim number one (Grievances PX D–K, and O–Q, and U). Additionally, the court shall consider the merits of the grievances set forth in the Union's counterclaim number four (Grievances C 8 through C 10). Although the merits of these disputes may be resolved, and the amount of judgment, if called for, determined, the judgment may not be executed. Instead, once the merits of the grievances are resolved, the arbitrator, in the case of the counterclaim number one grievances, and the district court, in the case of the counterclaim number four grievances, shall return their findings to the bankruptcy court for the Western District of Arkansas, Fort Smith Division. The bankruptcy court shall then determine the allowability and priority of the Union's claims as may be necessary.

Finally, we order the district court to enter an order striking all references in its opinion of October 10, 1984, that a "wildcat strike" occurred at the Tamaha mine on March 21, 1981, and that the Tamaha miners were fired on March 26, 1981.

Affirmed in part, reversed in part and remanded to the district court for further proceedings consistent with this opinion.