768 F.Supp. 691 (1991)
CONSTRUCTION, BUILDING MATERIAL, ICE AND COAL, LAUNDRY, DRY CLEANING AND INDUSTRIAL LAUNDRY AND DRY CLEANING DRIVERS, MEAT AND FOOD PRODUCTS SALESMEN, HELPERS, WAREHOUSEMEN, YARDMEN AND ALLIED WORKERS, LOCAL UNION NO. 682, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a labor organization, Plaintiffs,
v.
ED JEFFERSON CONTRACTING, INC., a corporation d/b/a Jefferson Ready Mix Co., Defendant.
No. 90-2080 C (5).
United States District Court, E.D. Missouri, E.D.
July 30, 1991.
*692 Clyde E. Craig, Craig & Craig, St. Louis, Mo., for plaintiffs.
James N. Foster Jr., McMahon, Berger, Hanna, Linihan Cody & McCarthy, St. Louis, Mo., for defendant.

MEMORANDUM AND OPINION
LIMBAUGH, District Judge.
Plaintiff filed this action to compel arbitration pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185. The case was tried before this Court sitting without a jury on January 16, 1991. This Court, having now considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, hereby makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

FINDINGS OF FACT
Plaintiff Construction, Building Material, Ice and Coal, Laundry, Dry Cleaning and Industrial Laundry and Dry Cleaning Drivers, Meat and Food Products Drivers, Helpers, Warehousemen, Yardmen and Allied Workers, Local Union No. 682, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union") is a voluntary unincorporated association consisting of several thousand members. The Union represents employees for purposes of collective bargaining concerning wages, hours and other terms and conditions of employment.
Defendant Ed Jefferson Contracting, Inc., d/b/a Jefferson Ready Mix Co. (the "Employer") is a corporation engaged in the construction supply business with its office and principal place of business located in Missouri.
At all material times, the Union was the sole and exclusive collective bargaining representative of certain of the employees of the Employer in a collective bargaining unit. The Union began representing the employees of the Employer with a collective bargaining agreement for a two-year period from 1988 to 1990.
The Employer and the Union negotiated a successive collective bargaining agreement *693 (the "Agreement") for a period beginning March 15, 1990 and ending March 14, 1991. Article VI of the Agreement provides for computation of vacation based on the number of hours worked by an employee in the year preceding his or her anniversary date of employment and for additional weeks based on years of "continuous service with his employer."[1]
Article VIII of the Agreement provides for a three-step grievance procedure, culminating in mandatory arbitration, for "differences [that] arise between the company and the union or any employee of the company as to the meaning or application of the provisions of this agreement." It provides:

Section 1. The aggrieved employee or employees shall first take the matter up with the shop steward who in turn will take the grievance up with the foreman in charge. Employees shall have the shop steward present on any grievance. If a satisfactory settlement is not effected with the foreman within one (1) working day, the employee shall submit such grievance to the union in writing, within ten (10) working days of its occurrence or knowledge thereof.

Section 2. If no satisfactory adjustment is agreed upon, the matter shall be referred by the Union to the general manager of the company or some other executive officer of the company with authority to act, who shall review the alleged grievance and offer a decision within five (5) working days after receipt of same.

Section 3. If no agreement has been reached pursuant to the procedure specified ..., the Union reserves the right to request arbitration of the dispute. If arbitration is requested by the Union, the Company and the Union agree to submit the grievance to an arbitration board as provided for in this agreement ...

Section 5. The grievance must be presented in writing to the employer within thirty (30) regular working days after the incident occurred giving rise to it or after the employee became aware of it or it shall be barred unless the failure of the employee to file such within thirty (30) days was for a reason beyond his control.
Agreement, Article VIII.
In late 1988 or early 1989, a dispute arose between the parties concerning whether hours worked by employees prior to the execution of the 1988-1990 collective bargaining agreement would be used in computing vacation eligibility after the execution of the Agreement.[2] By letter dated April 21, 1989, the Union notified the Employer of a dispute concerning computation of vacation pay. More than a year later, the Employer responded in a letter dated June 29, 1990 that pursuit of arbitration was both procedurally and substantively barred by the Agreement. Then on July 12, 1990, employees filed a written grievance alleging that the Employer violated the vacation provisions of the collective bargaining agreement. Specifically, the grievance alleged:
Employer has failed to comply with contract concerning vacation and vacation pay. Vacation to be given a year after employment from anniversary date to anniversary date with pay. This has not been done as far as pay wise.
Old contract to run with new contract with Teamster which was agreed upon by both employer and employee. We the employees request all our backpay in full plus vacation.
The Employer denied the grievance by letter dated July 17, 1990. The Union continued to seek arbitration of the grievance, *694 then filed this lawsuit on November 2, 1990.

CONCLUSIONS OF LAW
Plaintiff Union is a labor organization representing employees in an industry affecting commerce within the meaning of §§ 2(5), (6) and (7) of the LMRA. Defendant Employer is an employer engaged in a business affecting commerce, within the meaning of the definition of employer in §§ 2(2), (6) and (7) of the National Labor Relations Act ("NLRA"). This Court has jurisdiction by reason of § 301 of the LMRA, in that plaintiff seeks to enforce the terms of a collective bargaining agreement.
The issue before this Court is whether the parties agreed to arbitrate the present grievance pursuant to the collective bargaining agreement.
The United States Supreme Court reaffirmed the principles on arbitration set out in the Steelworkers Trilogy in AT & T Technologies v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citing Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)).
The first principle is that arbitration, and the related question of arbitrability, are "matters of contract" between the parties. Warrior & Gulf, 363 U.S. at 582, 80 S.Ct. at 1352. Second, the courts determine whether the parties agreed to arbitrate a particular grievance. Id. Third, the courts should determine only whether the parties agreed to submit a grievance to arbitration, not the merits of the claims submitted to arbitration. American Mfg. Co., 363 U.S. at 568, 80 S.Ct. at 1346. Finally, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1852-53.
In AT & T Technologies, Inc. v. Communications Workers, the Supreme Court reaffirmed those principles, stating:
Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.... The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty.
475 U.S. 643, 649, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)).
Thus, the Agreement between the parties establishes whether the dispute is subject to arbitration. Article VIII of the Agreement provides for arbitration regarding "differences [that] arise between the company and the union or any employee of the company as to the meaning or application of the provisions of this agreement." The dispute in this case arises in differences in interpretation over Article VI of the Agreement regarding computation of vacation pay. Therefore, this is a substantive issue for arbitration pursuant to the Agreement.
The Employer contends that the grievance in this case was untimely filed under Article VIII, Section 5, of the contract and therefore barred from arbitration. The Employer argues that the language of the Agreement bars untimely grievances and therefore there is no duty to arbitrate pursuant to the agreement.
The well-settled rule is that issues of substantive arbitrability were reserved for the district court, but issues of procedural arbitrability are properly left to the arbitrator. John Wiley, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898; Local No. 618 v. Town & Country Ford, 709 F.2d 509 (8th Cir.1983).[3] An issue of timeliness in submitting *695 a complaint is considered an issue of procedural arbitrability and therefore reserved for the arbitrator, not the district court. Town & Country Ford, 709 F.2d at 514.
The Employer argues that the Supreme Court departed from that rule in AT & T, implicitly overruling Town & Country Ford. The Employer argues that after AT & T the issue is solely the parties' intent and that here the Agreement bars untimely grievances from arbitration.
This Court agrees with the conclusion of the Fifth Circuit[4] that "[t]he Supreme Court's decision in AT & T in no way alters its decision in John Wiley." Oil, Chemical & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chemical Co., 815 F.2d 338, 340 (5th Cir.1987).
It is important to note that the Supreme Court, in AT & T was simply reaffirming established principles embodied in the Steelworkers Trilogy. (citation omitted). The Supreme Court did not change the fundamental principles upon which the courts have decided the issues of arbitrability.
Chevron, 815 F.2d at 340-41, n. 2. This position is supported by the fact that in AT & T, the Supreme Court was not faced with the issue of procedural arbitrability.[5]
This is not inconsistent with the approach of the Sixth Circuit in Local Union 89 v. Moog Louisville Warehouse, 852 F.2d 871 (6th Cir.1988). The Court stated that pursuant to Wiley and AT & T the key determination in determining arbitrability was the intent of the parties. However, the Court found that as a substantive matter, the language of the agreement in dispute did not compel arbitration unless a timeliness condition was met. 815 F.2d at 341. Therefore, the Court determined that the dispute was not arbitrable.
The Agreement in this case suggests only a time limitation, not a substantive bar to arbitration.[6] It states that a "grievance must be presented in writing to the Employer within thirty (30) regular working days after the incident occurred giving rise to it or after the employee became aware of it or it shall be barred." Agreement, Article VIII, Section 5. This language indicates a statute of limitations making it procedural in nature. See PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 513 (3rd Cir.1990) (distinguishing language creating an eligibility requirement for arbitration, which is substantive, from language creating a statute of limitations, which is procedural)[7]. Nothing in the Agreement suggests the time requirement to be substantive in nature.[8]
*696 As in Chevron, "the present case involves an issue of timely compliance with grievance procedures." Id. at 341. Questions of timeliness are questions of procedural arbitrability. Town & Country Ford, 709 F.2d at 514. Under John Wiley, this matter is reserved for the arbitrator to decide, and not for the district court. Id. The "subject matter" of the dispute is the interpretation of the section of the Agreement pertaining to computation of vacation pay. The Agreement provides for arbitration regarding differences as to the meaning or application of the provisions of this Agreement. The parties, therefore, are obligated to submit the matter to arbitration.
In addition to nonarbitrability, the Employer raises three other defenses: 1) that the dispute arose under an expired collective bargaining agreement; 2) laches; and 3) that this action was filed after the six-month statute of limitations of § 10(b) of the NLRA. Apparently, these are the Employer's attempts to dress the issue of procedural arbitrability in the cloak of a legal argument to entice the Court to decide that issue.
In support of its argument of the expired agreement, the Employer cites Chauffeurs, Teamsters, and Helpers, Local 238 v. C.R.S.T., Inc., 795 F.2d 1400 (8th Cir.1986). In that case, the employer and the union had a collective bargaining agreement from July 1, 1979 to June 30, 1982. At its expiration, the parties attempted to negotiate a new contract but were unable to agree on its terms and an impasse was reached. One year later, in July 1983, an employee was terminated following an accident which the employer contended he caused. The employee claimed to have been discharged without just cause and submitted a grievance to the union. The Eighth Circuit held that the disputed right to be discharged for just cause did not arise under the expired contract and therefore there was no right to arbitrate.
However, the facts of CRST are substantially different from the facts of this case. There, at the time the employee was fired and the dispute arose, the collective bargaining agreement which mandated arbitration had been expired for more than a year. No agreement was in place that required arbitration. Here, when the Union filed its grievance, the 1988-90 collective bargaining agreement had expired, but the successive Agreement was in effect. Both the 1988-90 collective bargaining agreement and the successive Agreement provided for arbitration regarding disputes over interpretation of the contract.[9] Regardless of whether the dispute "arose" under the 1988-90 collective bargaining agreement or the successive Agreement, this matter is a subject matter for arbitration.[10]
The Employer next strike at the timeliness issue through the defense of laches. In a suit to compel arbitration the question of laches is an equitable defense for the court to determine. Amalgamated Clothing Workers v. Ironall Factories Co., 386 F.2d 586, 591 (6th Cir.1967).
Laches is independent of any procedure established by the collective bargaining agreement and a decision on laches adds or subtracts nothing from the meaning of the agreement. Furthermore, consideration of the issue in no way involves a consideration of the merits of the underlying substantive issue.
Id. at 591-92.
For the defense of laches, the Employer must show that the union's delay in requesting arbitration prejudiced the employer's rights and defense in this matter. *697 As a matter of law, the Court concludes that it has not.[11] The Union notified the employer of the dispute on April 21, 1989. More than a year passed before the Employer responded on June 29, 1990 that the dispute was barred. The Union then promptly filed its formal written grievance on July 12, 1990. These facts do not support a defense of laches.
Finally, the Employer argues that the grievance is simply an attempt to avoid the six-month statute of limitations of § 10(b) of the NLRA. Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); Alcorn v. Burlington Northern R.R. Co., 878 F.2d 1105 (8th Cir.1989) (arbitration claims are subject to the § 10(b) six-month statute of limitations). Again, the Employer's position is without merit. The Employer denied the Union's demand for arbitration on July 19, 1990. The Union filed suit on November 2, 1990. There is no question it was filed within the six-month statute of limitations.
For the foregoing reasons, the Court holds that the dispute in this case arises in differences in interpretation over Article VI of the Agreement regarding computation of vacation pay and therefore, is a substantive issue for arbitration pursuant to the Agreement. Whether the grievance in this case was untimely filed under Article VIII, Section 5, of the contract and therefore barred from arbitration is a matter of procedural arbitrability for the arbitrator. Therefore, the Union's request for an order requiring the Employer to submit the grievance to the grievance procedures described in the Agreement will be granted.
Accordingly, judgment shall be entered for the plaintiff. This matter shall be submitted to arbitration.
NOTES
[1] The Agreement provides "An employee having one year's continuous service with his employer but less than three (3) years' shall be entitled to vacation benefits as follows, according to the number of hours worked in the year immediately preceding his anniversary date on which eligibility is determined;

700 to 900 hours  3 days' vacation with 24 hours' pay,
900 to 1,100 hours  4 days' vacation with 32 hours' pay,
1,100 or more hours  5 days' vacation with 40 hours' pay."
Agreement, Article VI  Vacations.
[2] The Congress of Independent Union ("CIU") represented employees of this Employer prior to 1988. The CIU agreement did not provide for vacation pay.
[3] See also Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743, 748 (8th Cir.1986) (rule of deference founded on recognition that procedural questions often intertwined with merits of dispute and that reservation of procedural issues for courts provides opportunity for serious delay and duplication of effort).
[4] The Eighth Circuit has not yet directly faced this issue as the post-AT & T cases it has considered have not involved the procedural versus substantive distinction. See Ozark Air Lines, Inc. v. Nat'l Mediation Bd., 797 F.2d 557 (8th Cir.1986); Chauffeurs, Teamsters and Helpers, Local Union 238 v. C.R.S.T., Inc., 780 F.2d 379 (8th Cir.1985), aff'd, 795 F.2d 1400 (8th Cir. 1986). See also District No. 9, Int'l Assoc. of Mach. & Aero. Workers v. Sparklet Devices, Inc., 635 F.Supp. 528 (E.D.Mo.1986). Therefore, this Court must look for guidance to the law of other circuits.
[5] "In AT & T, the issue involved whether the parties intended for disputes involving the layoff provision to go to arbitration. Whether disputes over layoffs are arbitrable is a question of substantive arbitrability which the Trilogy requires the courts to determine." Chevron, 815 F.2d at 340-41.
[6] "Unless a collective bargaining agreement indicates by `the most forceful evidence' an intention to exclude a matter from arbitration, the matter should be presumed arbitrable." Moog, 852 F.2d 871 at 875 (J. Gilmore, dissent), (citing Warrior & Gulf, 363 U.S. at 585, 80 S.Ct. at 1354).
[7] In another case where no issue of procedural arbitrability was presented, the Third Circuit noted that "[c]areful review of AT & T Technologies illustrates that the Supreme Court has not weakened its enthusiastic endorsement of arbitration in labor disputes. However, the message is clear that courts must carefully analyze the contractual language to determine whether a particular dispute is arbitrable." Morristown Daily Record, Inc. v. Graphic Comm. Union, Local 8N, 832 F.2d 31, 33-34 (3rd Cir.1987).
[8] The Sixth Circuit in Moog noted that the parties may depart from the traditional procedural-substantive distinction by their agreement. "It will not do to characterize something as `procedural' and conclude automatically that `procedural' matters are for the arbitrator if the parties have specified otherwise in the arbitration section itself. 852 F.2d at 875 (emphasis in original). However, the Agreement in this case suggests only a time limitation, not a substantive bar to arbitration.
[9] See also Nolde Bros., Inc. v. Bakery and Confectionery Workers Union, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977) (the obligations of parties under an arbitration clause of a collective bargaining agreement may survive contract termination when the dispute is over an obligation arguably created by the expired agreement).
[10] However, the issue of whether the grievance was timely filed is an issue of procedural arbitrability and reserved for the arbitrator.
[11] In making this determination, the Court in no way suggests whether the grievance in this case was untimely filed under Article VIII, Section 5, of the contract and therefore barred from arbitration. That remains a matter of procedural arbitrability for the arbitrator to decide.